UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Peter Kraemer and Charmaine Kraemer,

Plaintiffs,

v.

Croix Management Company, et al.,

Defendants.

Civil No. 02-284 JRT/FLN

**REPORT AND RECOMMENDATION**

---

Peter Kraemer, *No appearance.*
Chad Gabert, Esq., for Defendants.

---

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on February 21, 2003, on Defendants' Motion for Summary Judgment [#22] and Defendants' Motion to Dismiss for Failure to Serve Responsive Discovery and Rule 26(a)(1) Disclosures [#36]. The Defendants were represented by counsel at the hearing. The Plaintiffs, however, did not make an appearance at the hearing, nor did they respond to the Defendants' Motions. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons which follow, this Court recommends that Defendants' Motion for Summary Judgment be **GRANTED** and the Motion to Dismiss be **DENIED as moot**.

## I. FACTUAL BACKGROUND

This case arises out of a lease between the Plaintiffs and Defendants at the Turtle Lake Villas (Villas). The Villas are managed by Defendant Croix Management Company (Croix). (Br. in Supp. of Def. Croix Mgmt. Co.'s Mot. for Summ. J., 1). The Villas are a low-income development in



FILED 5-8-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD_______
DEPUTY CLERK_______

Turtle Lake, Wisconsin. The Villas are operated to comply with the Federal Low Income Housing Tax Credit Program, 42 U.S.C. § 1437-1437z-7. (Def.'s Br., 2). Tenants must complete annual certification procedures to maintain eligibility in the property. (Id.).

On August 24, 1999, the Plaintiffs filled out a preliminary tenant application for the Villas. (Complaint, 2 ¶ 10). On their application, Plaintiffs listed an income of $25,000 per year and assets including: $140,000 from the sale of their homestead; $2,400 in checking/savings accounts; and $500,000 in real estate. (Def.'s Br., 2). On September 3, 1999, Croix asked Plaintiffs to complete an income verification form. Plaintiffs completed the form on September 9, 1999, but neither their income nor their real estate was verified at that time. (Id.). Nevertheless, on September 24, 1999, the Plaintiffs signed a one-year renewable lease for the Villas. (Complaint, 3 ¶ 14). According to the Defendants, the Plaintiffs "gave repeated assurances they would provide proof of eligibility." (Def. Br., 2).

The Plaintiffs allege that over the next year and a half the Defendants engaged in harassment of the Plaintiffs. Plaintiffs began to receive copies of the preliminary tenant application and income verifications with notes requesting that the Plaintiffs sign and return them. (Complaint, 3 ¶ 18). In September 2000, Plaintiffs allege that the requests to sign the previous paperwork became "more insistent and menacing." (Id. at ¶ 19). Plaintiffs were told they would have to vacate their unit at the expiration of their lease if they did not complete the income verifications. The Plaintiffs submitted some of the requested information but not an income tax return for 1999 because the Plaintiffs claimed not to have filed a 1999 return. (Def.'s Br., 3).

Again in March 2001, Croix required the Plaintiffs to provide additional information about the sale of their previous homestead and a 1999 income verification for self employed persons.

(Complaint, 4 ¶ 21). A similar request was made in April 2001. (Id. at ¶ 22-23). At this time, the Plaintiffs advised Croix that their homestead was sold in 1999 and the proceeds were subject to a trust for their deceased son. (Def.'s Br., 3). Plaintiffs also told Croix that, as trustees, they managed additional properties worth $22,000. (Id.). Plaintiffs contend that in September 2001, individuals claiming to be from Croix demanded access to Plaintiffs' home because of a report that the windows were malfunctioning. (Complaint, 4 ¶ 24). However, Plaintiffs claim they never made such a report and that the windows were functioning. (Id.). The Complaint also alleges that Defendant Marge Alden left a threatening message for Plaintiffs on their answering machine, threatening eviction if the plaintiffs did not provide the missing file information. (Complaint, 5 ¶ 27). In September 2001, the Plaintiffs claimed they were exempt from filing tax returns because of negative net income in 2000. (Def.'s Br., 3).

In January of 2002, a representative of Croix indicated that the owner of the Villas needed a tax return for the Plaintiffs from 1999, but Plaintiffs again claimed they were exempt from filing. (Complaint, 5 ¶ 28). The owner also wanted documentation from the Assessor's office regarding the value of the Plaintiffs' real estate, and that if such information was not provided by January 31, the Plaintiffs would be evicted. (Id.).

The Plaintiffs filed their complaint on January 31, 2002. The Complaint alleges: harassment; breach of contract or the covenant of quiet enjoyment; extortion; conspiracy; and Intentional Infliction of Emotional Distress. (Complaint, 6-9, ¶ 29-43).

Because the Plaintiffs failed to provide the necessary verification paperwork to prove eligibility for low income housing, the Plaintiffs were notified in February 2002 to vacate their unit by March 31, 2002. (Def.'s Br., 5). Plaintiffs refused to vacate and in April 2002, Croix filed an

unlawful detainer action against the Plaintiffs in Polk County, Wisconsin. (Id.). Plaintiffs sought to dismiss the unlawful detainer action, but the court rejected their claims and defenses and entered an eviction judgment against them. (Id. at 5-6). The Plaintiffs vacated the premises on July 30, 2002, without paying rent for May, June, or July. (Id. at 6).

The Defendants have now moved for summary judgment and to dismiss the case. The Motion to Dismiss is a request to dismiss the case as a sanction for the Plaintiffs' failure to comply with discovery and this Court's discovery orders. Because this Court recommends that the Defendants' Motion for Summary Judgment be granted, we need not address the Motion to Dismiss.

## II. STANDARD OF REVIEW

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986); Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000). Therefore, summary judgement is appropriate when the moving party establishes based on the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23. When considering a motion for summary judgement, a court should construe all evidence in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson, 477 U.S. at 248.

Fed. R. Civ. P. 56(e) makes clear that once the moving party files a properly supported

motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, an adverse party may not "rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 249-56 (noting that if the evidence submitted by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted); see also Fed. R. Civ. P 56(e). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. If the opposing party fails to carry their burden, summary judgment should be granted. See Celotex, 477 U.S. at 322; Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000).

## III. LEGAL ANALYSIS

### A. Harassment

The first count in Plaintiffs' complaint is for Harassment in violation of Wis. Stat. § 947.013 (1)(b). The Plaintiffs claim they were harassed by the Defendants' repeated requests that Plaintiffs provide the same information again and again under threat of eviction. The Defendants contend that this count fails to state a claim for relief because the statute is part of the criminal code and there is no private civil cause of action for violating the statute. (Def.'s Br., 7). Because the Wisconsin Court of Appeals has expressly held that there is no right of action for individuals under § 947.013, this Court agrees with Defendants.

The statute provides that a person is guilty of a Class B forfeiture for: (1) striking, shoving, kicking, or otherwise subjecting a person to physical contact or attempts or threatens the same; or (2) engaging in a course of conduct or repeatedly committing acts which harass or intimidate another

person and serve no legitimate purpose. See Wis. Stat. § 947.013(1m). The crime becomes a Class A misdemeanor when the act is accompanied by a credible threat that places the victim in reasonable fear of death or great bodily harm. See Wis. Stat. § 947.013(1r).

If a criminal statute is a safety statute, then a civil cause of action is also created and violation of the statute is negligence per se. See In re Estate of Drab, 422 N.W.2d 144, 145 (Wis. Ct. App. 1988). A safety statute protects a class of persons from a particular harm. See id. But a criminal statute's purpose is only to secure a right to individuals as members of the public, the criminal statute is not a safety statute. See id. The Wisconsin Court of Appeals concluded that the criminal harassment statute did not protect a specific class of persons from harassment, but rather the statute extended protections to individuals. See id. at 145-46. Accordingly, the court concluded that § 947.013 does not grant a private right of action for its violation. See id. at 146[1].

Even if there were a private cause of action under § 947.013, there is no genuine issue of material fact suggesting that Defendants' conduct violated the statute. The Plaintiffs have not made any claim that the Defendants physically contacted or threatened to contact the Plaintiffs under § 947.013(1m)(a). Nor did the Defendants engage in a course of conduct to harass which served no legitimate public purpose. Rather, the Defendants conduct had the legitimate purpose of verifying that the Plaintiffs were eligible to live in low income housing. Under the Federal Low Income Housing Program it is the policy of the United States to provide assistance with housing to low income families and to assist the States in providing affordable housing to such families. See 42 U.S.C. § 1437(a)(1)(a)-(b). Thus, verifying that plaintiffs were eligible to live in the housing so that

---

[1] Wis. Stat. § 813.125 would provide a civil remedy for harassment under § 947.013 in the form of a restraining order or injunctive relief. However, the Plaintiffs' only requested relief in the form of damages.

the federal program actually aided the class of persons the Act was intended to aid, should also be a legitimate public purpose.

The Plaintiffs claim that the Defendants have violated a statute for which there is no private civil cause of action. Nor would the Defendants' conduct violate the statute even if there were a private cause of action. Consequently, the Court recommends that the Defendants' Motion for Summary Judgment on the Harassment count be granted.

**B. Breach of Contract and the Covenant of Quiet Enjoyment**

The Plaintiffs' second claim for relief is for breach of contract and specifically breach of the covenant of quiet enjoyment. (Complaint, 7 ¶ 32-34). The Defendants assert that the Plaintiffs were the ones who breached the lease by failing to provide Croix with independent verification of income and assets. Under paragraphs 2 and 19 of the lease, tenants are required to maintain eligibility under the low income housing tax program and comply with the annual certification process in the appropriate time frame. If a renter becomes ineligible the "renter agrees to voluntarily vacate at landlord's 30 day notice period." The Defendants actions did not constitute a breach of the lease or the covenant of quiet enjoyment.

None of the actions of the Defendants breached the Plaintiffs' lease. The Defendants requested information from the Plaintiffs as was required by federal law and specified in the lease. The requests were frequent and repetitive because of the Plaintiffs' inadequate disclosures. For instance, on September 8, 2000, Croix requested another income and asset summary after sending two letters, making phone calls and leaving a note on the Plaintiffs' door. (See Kuderer Affidavit, Exhibit F). The instructions on the summary stress that the information needs to be complete and that if a box is checked yes (that the tenant has the specified income or asset), then the tenant must

identify the source and supply an address so the information could be verified. While the Plaintiffs provided the completed summary on September 28, 2000, the report was inadequate and incomplete. The Plaintiffs identified numerous sources without giving names or addresses, such as disability/death benefits; net farm/business income; property held as an investment; etc. Throughout the course of the Plaintiffs' tenancy, the Defendants were unable to verify the Plaintiffs' eligibility information. Therefore, Croix was required to make repeated requests for information. These actions in no way violated the Plaintiffs' lease. The Defendants did not do anything illegal or wrong, in fact they were complying with federal law in trying to ascertain the Plaintiffs' eligibility.

The Defendants assert that the lease did not contain an express covenant of quiet enjoyment. However, both Minnesota and Wisconsin imply the covenant into leases. See Bruckner v. Helfaer, 222 N.W. 790, 791 (Wis. 1929) (covenant implied in every lease for a term of less than three years); Wilkinson v. Clauson, 12 N.W. 147, 148 (Minn. 1882). The covenant of quiet enjoyment can be breached in two ways. The landlord may breach the covenant by disturbing the tenant's possession in a way which renders the premises unfit for occupancy or which deprives the tenant of the beneficial enjoyment of the premises. See Collins v. Lewis, 54 N.W. 1056, 1057 (Minn. 1893) (landlord's sanction of trespass by third party which destroyed part of tenant's lot was liable for breach of covenant of quiet enjoyment); Goebel v. Hough, 2 N.W. 847, 848 (Minn. 1879); see also 49 Am. Jur. 2d Landlord and Tenant § 606. Secondly, the covenant protects the tenant from claims by parties whose title is paramount or superior to that of the lessor. See Efta v. Swanson, 132 N.W. 335, 336 (Minn. 1911) (breach of covenant contained in a deed); see also 49 Am. Jur. 2d Landlord and Tenant § 601. The Plaintiffs do not assert that someone with superior title is claiming possession of the premises, thus, the claim must be based on the intentional acts of the Defendants.

The Defendants' actions did not prevent the Plaintiffs from having the use and enjoyment of the premises. C.f. Collins, 54 N.W. at 1057 (covenant breached when party excavated 8 feet of the tenant's lot to a depth of 15 feet and under tenant's office building). As stated supra, the Defendants had a right to obtain eligibility information from the Plaintiffs. The Plaintiffs were not forthcoming with the required information and often did not answer the Defendants' requests. (Kuderer Affidavit, Exhibits D-T). The Defendants' actions did not deprive the Plaintiffs of the beneficial enjoyment of the premises, the Defendants merely made repeated requests for eligibility information, usually by letter. These requests did not make the premises "unfit for occupancy." While the eligibility forms were repetitive, the Defendants' actions did not deprive the Plaintiffs of the beneficial enjoyment of their home. The Defendants' acts do not constitute a breach of the implied covenant of quiet enjoyment, and the Motion for Summary Judgment should be granted.

## C. Extortion

Plaintiffs also assert a cause of action for extortion, claiming that the Defendants extorted the Plaintiffs by threatening eviction if they did not provide the repeated information. (Complaint, 7 ¶ 35-38). The Plaintiffs also assert that the Defendants attempted to coerce the Plaintiffs to backdate legal documents under threat of eviction. (Id. at ¶ 37). However, the Plaintiffs have provided no evidence to support their proposition that the Defendants asked them to backdate legal documents. The Defendants maintain that there is no civil cause of action for extortion[2]. (Def.'s Br.,

---

[2] The Defendants also suggest that "a liberal interpretation" of the Plaintiff's Complaint might make out an allegation of economic duress under Wurtz v. Fleischman, 293 N.W.2d 155, 160 (Wis. 1980). Minnesota law, however, does not recognize economic duress. See St. Louis Park Inv. Co. v. R.L. Johnson Inv. Co. Inc., 411 N.W.2d 288, 291 (Minn. Ct. App. 1987). Thus, normally we would apply Minnesota choice of law principals to determine which state's law to apply. See Retail Associates, Inc. v. Macy's East, Inc., 245 F.3d 694, 697 (8th Cir. 2001) (in diversity cases federal courts apply forum state's choice-of-law rules); Jepson v. Gen. Cas. Co.,

11).

The Plaintiffs do not cite any legal authority for their extortion claim, they merely reference Black's Law Dictionary. Thus, it is difficult to determine exactly what the claim is based on. Extortion is encompassed in the criminal statutes under the crime of coercion. See Minn. Stat. 609.27, 1987 advisory committee's note. The crime of extortion or coercion occurs when a person makes certain threats and thereby causes another against the other's will to do any act or forbear doing a lawful act. See Minn. Stat. 609.27(1). An action for civil coercion exists when a person, by the unlawful act of another, is induced to do or perform some act under circumstances which deprive him of the exercise of his free will. See Pillsbury Co. v. Nat'l Union Fire Ins. Co., 425 N.W.2d 244, 251 (Minn. Ct. App. 1988)[3]. To sustain an action for damages on the grounds of coercion, there must be some wrongful or unlawful act sufficient to constrain the other person to do or refrain from doing something they have a legal right to do. See id. The "test is not the nature of the threats, but rather the state of mind induced thereby in the victim." Id. citing Wise v. Midtown Motors, 42 N.W.2d 404, 407 (Minn. 1950).

Presumably, the Plaintiffs' argument is that they were without free will to oppose the

---

513 N.W.2d 467 (Minn. 1994) (Minnesota applies choice of law analysis when the laws in the two states conflict). However, even in Wisconsin, economic duress is only a defense to a contract and the Plaintiffs have not plead that they signed the lease or any other contract because of extortion or duress. Rather, they claim that they filled-out eligibility verification forms because of the threats of the Defendants. Because the claim of economic duress would fail under both Minnesota and Wisconsin law, we need not apply choice-of-law principals to determine which state's laws would apply.

[3] While there is a private cause of action for coercion, there is no comparable action for attempted coercion. See Milavetz, Gallop & Milavetz, P.A. v. Hill, 1998 WL 422229, *5 (Minn. Ct. App. 1998) (giving elements of coercion but not recognizing civil cause of action for attempted coercion).

Defendants' repeated requests for eligibility verification under the threat of eviction. But this argument clearly fails. The Plaintiffs' will was not overcome as they did not comply with the Defendants' requests. The Plaintiffs often did not provide the eligibility forms to Croix, and even when they did provide the information it was often incomplete. See supra; Kurderer Affidavit. Even if the Defendants' requests were coercive, it does not appear that the Plaintiffs' wills were overborne. Furthermore, the Defendants did not do any wrongful or unlawful acts, they simply enforced their rights under the lease. Threatening to do what one has a legal right to do is not duress or coercion. See True v. Older, 34 N.W.2d 700, 705 (Minn. 1948). Thus, the Defendants threats of eviction do not constitute coercion because Croix could legally evict the Plaintiffs if they did not comply with the terms of the lease requiring eligibility verification. The facts and record in this case do not support a claim for extortion or coercion, and the Defendants' Motion for Summary Judgment should be granted.

**D. Intentional Infliction of Emotional Distress**

The Defendants urge that there are no material facts to support Count Five in the Complaint for Intentional Infliction of Emotional Distress. (Def.'s Br., 12-14). To sustain a claim for Intentional Infliction of Emotional Distress, a plaintiff must show: (1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) it caused emotional distress; and (4) the distress was severe. See Kelly v. City of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999) citing Hubbard v. United Press Int'l, 330 N.W.2d 428, 438-39 (Minn. 1983). A plaintiff claiming intentional infliction of emotional distress has a heavy burden of production regarding the severity of the stress. See Hubbard, 330 N.W.2d at 439. The distress must be so severe that no reasonable person could be expected to endure it. See id. Further, under the element that a defendant's conduct

be extreme and outrageous, the conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Id. However, while the conduct must be outrageous, it need not be illegal or accompanied by another wrongful or illegal act. See Kelly, 598 N.W.2d at 663.

Summary judgment is proper on a claim for intentional infliction of emotional distress if a party does not meet the high standard of proof for the claim. See Kuelbs v. Williams, 609 N.W.2d 10, 17 (Minn. Ct. App. 2000) citing Strauss v. Thorne, 490 N.W.2d 908, 913 (Minn. Ct. App. 1992). A party resisting summary judgment must do more than rest on mere averments. See DLH Inc. v. Russ, 566 N.W.2d 60, 70 (Minn. 1997). The Minnesota Supreme Court has recognized that the tort of intentional infliction of emotional distress is a narrow cause of action, and "is sharply limited to cases involving particularly egregious facts." Hubbard, 330 N.W.2d at 439.

The allegations made by the Plaintiffs do not support a claim for intentional infliction of emotional distress. The allegations in the complaint do not satisfy at least two elements in the cause of action. First, the Defendants' conduct was not extreme or outrageous. As stated earlier, asking for eligibility verifications required by federal law is not harassment, nor is it outrageous or extreme. Moreover, Plaintiffs could have themselves stopped the eligibility requests if they had simply provided the information to the Defendants instead of not answering or providing incomplete information. Defendants' requests for information did not pass the bounds of decency, even if they were repetitive. There were only eight letters that the Defendants sent to the Plaintiffs regarding eligibility verifications over a period of more than two years. See Kuderer Affidavit. Even coupling these letters with phone requests, the Defendants' conduct would not be "intolerable to the civilized community."

Nor can the Plaintiffs meet the heavy burden regarding the severity of the stress. There is nothing in the complaint or record to demonstrate what distress the Plaintiffs experienced or in what way the distress was severe. The Plaintiffs were not distressed enough to leave the Villas, in fact they stayed in the Villas for over two years, and remained in their apartment "enduring and tolerating" the Defendants' requests, even after they were evicted. The Plaintiffs' stress was not so severe that a reasonable person could not be expected to endure it. The Plaintiffs, therefore, have not satisfied all four elements of the tort. Because the Plaintiffs cannot satisfy the stringent test for intentional infliction of emotional distress, summary judgment in favor of the Defendants is appropriate.

**E. Conspiracy**

The Plaintiffs also assert a claim for conspiracy, citing the Restatement of Torts. (Complaint, 8 ¶ 39-41). The Plaintiffs claim that the Defendants acted together to "harass, compel, coerce and extort to plaintiffs' detriment; and deprived plaintiffs of "quiet enjoyment" . . . and defendants have willfully inflicted emotional stress on plaintiffs." (Complaint, 8 ¶ 40).

A conspiracy is a combination of persons to accomplish an unlawful purpose by unlawful means. See Harding v. Ohio Cas. Ins. Co., 41 N.W.2d 818, 824 (Minn. 1950). On the other hand, a combination of persons to accomplish a lawful purpose by lawful means is not a conspiracy and is lawful. See id. Damages for a conspiracy are predicated on a civil wrong done to the plaintiff, not the conspiracy or combination. See id. Thus, a conspiracy must be supported by an underlying tort. See D.A.B. v. Brown, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997).

We have concluded that summary judgment in favor of the Defendants is appropriate in all of the underlying causes of action asserted by the Plaintiffs. Therefore, there is no independent tort

or cause of action to support the conspiracy claim. Nor were the Defendants actions unlawful or to accomplish an unlawful purpose. Summary Judgment should also be granted to the Defendants on the claim for conspiracy.

## IV. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment [#22] should be **GRANTED** and Defendants' Motion to Dismiss for Failure to Serve Responsive Discovery and Rule 26(a)(1) Disclosures [#36] should be **DENIED as moot**.

DATED: May 7, 2003.

FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.